# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 07/10/2020 01:30:48 PM.
30-2020-01131276-CU-PO-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By Valerie Hammer, Deputy Clerk.

ANDREA M. TYTELL  SBN: 166835
LAW OFFICES OF ANDREA M. TYTELL
1333 South Pacific Coast Hwy. Suite 204
Redondo Beach, California  90277
Telephone: (310) 416-9710
Facsimile: (310) 640-1601
E-Mail: lawher@msn.com

Attorney for Plaintiff, CHELSEA JOHNSON

# SUPERIOR COURT OF STATE OF CALIFORNIA

# FOR COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

| | |
|---|---|
| CHELSEA JOHNSON, an individual,<br><br>Plaintiff(s),<br><br>vs.<br><br>CHAPMAN UNIVERSITY; BOARD OF TRUSTEES OF CHAPMAN UNIVERSITY; DANIELE C. STRUPPA, PH.D., individually and as President of CHAPMAN UNIVERSITY; JERRY PRICE, PH.D., individually and as Vice President for Student Affairs and Dean of Students of CHAPMAN UNIVERSITY; JASON MCALEXANDER, individually and as Director of Disability Services at CHAPMAN UNIVERSITY; and DOES 1 through 25, INCLUSIVE,<br><br>Defendant(s). | CASE NO. 30-2020-01131276-CU-PO-CJC<br><br>[Assigned to: Judge Linda Marks<br><br>[UNLIMITED CIVIL CASE - Amount Demanded Exceeds $25,000]<br><br>COMPLAINT FOR DAMAGES<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, CHELSEA JOHNSON, hereby complains and alleges as follows:

## INTRODUCTION

1. CHELSEA JOHNSON (hereinafter "C.J.") is a bright, articulate, courageous young woman who attended college at Defendant CHAPMAN UNIVERSITY (hereinafter "CHAPMAN"). Since childhood, C.J. has waged a valiant battle against multiple bouts of

---
JOHNSON V. CHAPMAN UNIVERSITY
COMPLAINT FOR DAMAGES

1

blood cancer which ravaged her body. The chemotherapy treatments have left her weak, debilitated and in constant pain from neuropathy which impedes her ability to ambulate while severely impacting her stamina. While her stamina may be affected, her spirit is not. She continues to present with a bright and positive presence wherever she goes. C.J. also suffers from gastrointestinal reflux disease (GERD), hypertension, chronic fatigue syndrome, fibromyalgia, and irregular heartbeat (tachycardia).

2. In additional to these physical conditions, C.J. has also been diagnosed with attention deficit hyperactive disorder (ADHD). From time to time, she does struggle with depression and does become anxious over things that tax her physical strength and vitality. C.J.'s physical conditions remind her that she has been ill most of her life. Despite this, she does not hesitate to take on tasks that move her closer to her goals, specifically, obtaining a post secondary education .

3. The combination of the cancer treatment and the residual effects of the chemotherapy have affected C.J.'s cognitive functions. In particular, C.J.'s visual, perceptual and visual motor skills are significantly impaired, resulting in memory loss, impaired focus and concentration. Tasks involving visual perception such as math, math-based sciences, art, design and photography are very difficult for her.

4. C.J. attended CHAPMAN as an undergraduate from 2015 until her withdrawal from the University during the 2018-2019 academic year. C.J. chose to go to CHAPMAN because CHAPMAN promoted itself as an institution that would accommodate her disabilities so that she could excel as a student. Indeed, CHAPMAN has a "Diversity & Inclusion Statement" stating in pertinent part:

> At Chapman, the term diversity implies a respect for all and an understanding of individual differences including race, color, religion, sex, gender identity, gender expression, pregnancy, national origin, ancestry, citizenship status, age, marital status, physical disability, mental disability, medical condition, sexual orientation, military or veteran status, genetic information and any other characteristic protected by applicable state or federal law, so that all

members of the community are treated at all times with dignity and respect.

5. Moreover, after several meetings and significant reassurance, CHAPMAN's Office of Disability Services promised C.J. that CHAPMAN would provide her with accommodations for her specific disabilities.

6. Unfortunately, because CHAPMAN refused to keep its promises to accommodate C.J., she struggled academically, physically and emotionally while attending CHAPMAN. When it became clear that CHAPMAN did not intend to honor its commitment to providing C.J. promised accommodations, withdrew financial assistance and would not follow the law prohibiting discrimination based upon disability, C.J. had no choice but to leave the university and bring this action.

## PARTIES

7. Plaintiff C.J. is and at all times relevant, was an individual over the age of eighteen. C.J. has both physical and mental disabilities. Plaintiff currently resides in County of Los Angeles, State of California.

8. Defendant CHAPMAN is and at all relevant times was, a private, non-profit corporation organized under the laws of the State of California and operating as a 4-year private university in the County of Orange, State of California.

9. Defendant, BOARD OF TRUSTEES OF CHAPMAN UNIVERSITY (hereinafter the "CHAPMAN BOARD"), is and at all times was, a legal entity acting as the governing body of CHAPMAN, with its principal place of business in the County of Orange, State of California.

10. Defendant, DANIELE C. STRUPPA, PhD. (hereinafter "STRUPPA") is and at all relevant times was an individual over the age 18 years who is employed by CHAPMAN as its President. Plaintiff is informed, believes and thereon alleges that STRUPPA resides in the County of Orange, State of California.

11. Defendant, JERRY PRICE, PhD. (hereinafter "PRICE") is and at all relevant times was, an individual over the age of 18 years who is employed by CHAPMAN as Vice President for Student Affairs and Dean of Students. Plaintiff is informed and believes, and

thereon alleges, that PRICE resides in the County of Orange, State of California.

12. Defendant, JASON MCALEXANDER (hereinafter "MCALEXNDER") is and at all relevant times was, an individual over the age of 18 years who is employed by CHAPMAN as Director of CHAPMAN'S Office of Disability Services. Plaintiff is informed, believes, and thereon alleges, that MCALEXANDER resides in the County of Orange, State of California.

13. The true names and capacities, whether individual, corporate, public entity, or otherwise, of those Defendants identified as DOES 1 through 25, inclusive, are presently unknown to Plaintiff. Plaintiff therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege said Defendants' true names and capacities once ascertained with particularity. Plaintiff is informed, believes and thereon alleges that each of the DOE Defendants are responsible in some manner for the occurrences alleged herein and that the damages alleged herein were proximately caused by their acts and/or omissions.

14. At all relevant times, Defendants and each of them are alleged were the principal, agent, servant, employee, or representative of each of the other Defendants acting within the course and scope of their employment, agency and authority.

## JURISDICTION AND VENUE

15. The above-entitled Superior Court has jurisdiction over the Defendants and each of them because each Defendant resides and/or conducts business in the County of Orange, State of California.

16. The above-entitled Superior Court is the proper venue for trial of the causes of action alleged herein because the acts, omissions, injuries, and damages alleged herein occurred in the County of Orange, State of California.

## FACTUAL ALLEGATIONS

17. In 2014, C.J. began to apply for admission to universities. C.J. specifically sought admission to universities that had the ability and willingness to accommodate her physical and mental disabilities, thus enabling her to thrive both academically and socially.

18. In 2015, C.J. was admitted to several universities, including Defendant, CHAPMAN UNIVERSITY (hereinafter "CHAPMAN"). C.J. liked CHAPMAN because it was a small, liberal arts school that promised individualized attention. CHAPMAN awarded C.J. an academic scholarship and grants so that most of C.J.'s tuition and related expenses would be paid for by CHAPMAN.

19. Prior to selecting CHAPMAN, C.J. discussed disabilities with officials of the school. CHAPMAN assured C.J. that it had a strong non-discrimination policy, and that it had programs in place that would assist her with her course work in light of her disabilities. Based upon these assurances, C.J. enrolled at CHAPMAN.

20. Prior to commencing classes at CHAPMAN in the fall of 2015, C.J. registered with CHAPMAN'S Office of Disability Services in order to formally request specific accommodations for her classes consistent with the promises made at the initial meetings between C.J. and the CHAPMAN.

21. CHAPMAN responded to C.J.'s request for accommodations by sending her an Accommodation Letter (hereinafter the "Accommodation Letter") that set forth the SPECIFIC accommodations CHAPMAN would provide to C.J. for the semester. Some of the accommodations described in the Accommodation Letter, included:

    a. Giving C.J. priority registration so that she could select classes that were held during the times of day when she could optimally function both physically and mentally;

    b. Providing C.J. with a student note taker for all of C.J.'s classes;

    c. Allowing C.J. to record lectures, if permitted by the course instructor;

    d. Asking C.J.'s professors to be flexible in their attendance policy so that C.J. could have excused absences as necessary to accommodate her poor health and the manifestations thereof;

    e. Allowing C.J. to take her tests in a private and secluded testing center where there would be minimal distractions; and

    f. Providing C.J. with additional time to take her examinations.

22. As instructed by the Accommodation Letter, C.J. forwarded the letter to all of her

instructors. C.J. repeated this process of obtaining and distributing an Accommodation Letter every semester during her tenure at CHAPMAN.

23. C.J. excelled academically during her first semester in the fall of the 2015-2016 academic year, earning a 3.5 grade point average. C.J.'s grades were lower in the Spring Semester of 2015-2016 due to the fact that she missed many classes due severe and chronic pain.

24. When C.J. attempted to enroll in classes for the fall semester of the 2016-2017 academic year, she could not get into those classes that were being held during the times of the day when she could best function. Instead of allowing C.J. early registration as promised, CHAPMAN ignored the promises made to C.J. by permitting non-disabled students to register prior to C.J. As a result C.J. was barred from enrolling in the classes of her choice due to the fact they became full before she could enroll. CHAPMAN had not given C.J. "priority registration" due to her disabilities, as promised in its Accommodation Letters.

25. Due to the fact that C.J. was forced to enroll mostly in morning classes – a time of day that is not optimal for her, she began struggling academically during the fall semester of the 2016-2017 academic year. Compounding C.J.'s difficulties, CHAPMAN failed to provide C.J. with a note taker as promised. As a result of CHAPMAN's failure to provide C.J. with the promised accommodations, C.J. failed classes in American Sign Language (ASL) and Statistics since the instructors refused to accommodate her stated needs that were clearly outlined in her agreements with the CHAPMAN's Disability Office. Furthermore, the Testing Centers where C.J. took her examinations were crowded and noisy, contrary to CHAPMAN'S promise to provide C.J. with Testing Centers that had minimal distractions.

26. CHAPMAN'S lack of accommodations for C.J. continued into the spring semester of the 2016-2017 academic year. C.J. was again denied priority registration, thereby forcing her to enroll in classes that occurred from 9:00AM to 7:00PM on Mondays and Wednesdays, and 9:00 a.m. to 12:00 p.m. on Fridays. The long day of classes on Mondays and Wednesdays took an enormous physical and mental toll on C.J.; she was often required to use Tuesdays and Thursdays to rest and recover. The schedule also meant that she missed many classes due

to exhaustion. C.J. failed a Public Speaking course that semester despite doing well on tests because she missed too many "speech" assignments. Moreover, despite CHAPMAN's promises to accommodate her, the instructor refused to allow C.J. to make up the missed assignments. Similarly, in her Psychological Research course, C.J. was not allowed to make up missed homework or tests. CHAPMAN did not provide a student note taker in any of her classes during the semester, even though the Accommodation Letter said that note takers would be provided.

27. As a result of the exhausting academic schedule during the 2016-2017 spring semester, combined with CHAPMAN'S failure to accommodate C.J.'s serious disabilities, C.J.'s grades for the Semester suffered. In or around June of 2017, CHAPMAN notified C.J. that she was being placed on academic probation, thus jeopardizing her scholarships and financial aid. The threat that C.J. would be unable to pay for her education, dramatically heightened her levels of stress, thus exacerbating her emotional and physical disabilities.

28. During the fall semester of the 2017-2018 academic year, C.J. moved into an apartment complex owned by CHAPMAN called "Panther Village". Unfortunately, the complex was in terrible disrepair, with poor plumbing, insect infestation, and feral cats everywhere. C.J. is allergic to cats, so the feral cat issue, combined with the lack of maintenance and CHAPMAN's failure to respond to requests for repairs, meant that C.J. had to take allergy medications, which made C.J. too tired to attend her many of her classes.

29. In terms of her academic load during the 2017-2018 Fall Semester, C.J. was required to take Spanish to fulfill CHAPMAN'S foreign language requirement. C.J. was concerned about a foreign language course because of her memory issues, and the fact that her memory issues had caused her to fail an American Sign Language (ASL) class during the 2016-2017 academic year. Despite voicing these concerns to officials at CHAPMAN, CHAPMAN required C.J. to take the Spanish course. Predictably, C.J. struggled in her ability to remember words and phrases as the course progressed. When it was apparent that C.J. was failing the Spanish course, C.J. complained again to CHAPMAN officials about the situation. Eventually, CHAPMAN allowed C.J. to drop the Spanish class, and waived the foreign-

language requirement.

30. That same semester, C.J. failed her Communication Research Methods course because the instructor did not allow C.J. to make up quizzes that C.J. had missed as a result of her medical condition. The instructor also failed to provide C.J. with formulas during the tests as CHAPMAN had promised. Furthermore, despite the fact that C.J. had been promised in her Accommodation Letter at the beginning of her term that she would be offered a special Testing Center where she would be able to take her tests in an environment with minimal distractions, C.J. was required to take many of her tests in the crowded and noisy library, or other rooms. When C.J. complained that she had been promised a private testing room, CHAPMAN refused to provide her with the promised accommodation. Furthermore, CHAPMAN'S Office of Disability Services sent C.J. an email stating that she would no longer be provided with note takers for many of her classes. CHAPMAN's failure to provide C.J. sufficient accommodations caused C.J.'s grades to suffer further, and exacerbated her physical and mental issues. The increased stress also caused C.J.'s life outside the classroom, such as attending school activities and events, and making friends, to suffer immensely.

31. During the spring semester of 2017-2018, C.J. enrolled in four courses, some of which she was repeating a second time (e.g. the Public Speaking course) since she had earlier failed the courses due to the lack of accommodations by CHAPMAN. Repeating courses was discouraging and stressful and further exacerbated C.J.'s mental and emotional disabilities. Therefore, when C.J. began missing classes due to her deteriorating physical and emotional health, officials at CHAPMAN, rather than re-committing to provide C.J. with the accommodations she had been promised, told C.J. to take a medical leave of absence. JC asked her course instructors if she could somehow stay enrolled in her courses during her leave, perhaps completing the courses during the summer months, but the instructors would not accommodate her requests, informing C.J., contrary to the terms of the Accommodation Letter, that personal attendance in the courses during the academic term would be necessary. On or around April 11, 2018, C.J., left with no alternative, withdrew from all of her classes.

32. After withdrawing from all of her classes during the 2017-2018 spring semester, C.J. spent the summer of 2018 making a concerted effort to improve her physical and mental health. C.J. visited several doctors, started physical therapy (including aqua-therapy to alleviate pain and fatigue), changed her diet, changed her medications, and underwent surgery. She felt well enough by the end of the summer of 2018 to return to CHAPMAN to complete her course work. C.J. always intended to obtain a university degree.

33. Unfortunately, when C.J. tried to enroll for classes at CHAPMAN for the fall semester of 2018-2019, CHAPMAN immediately resumed its pattern of failing to accommodate her. CHAPMAN once again failed to provide C.J. with priority registration thus depriving Her of the ability to enroll in classes that could accommodate her disabilities setting C.J. up for continues failure. Furthermore, even though CHAPMAN had promised C.J. that it would accommodate her with a flexible absence policy, the instructors in the classes in which C.J. was able to enroll refused to make any accommodations for her because of absences dues to medical appointments and ill health. C.J. was met with the same resistance toward flexible exam-taking policies. Due to CHAPMAN's failure to provide C.J. with these accommodations, she suffered from panic attacks and could not physically or emotionally take final exams as required by her professors. As a result, C.J., once again. C.J. began failing academically.

34. Unable to complete a class required for her Communications major (that is, Public Speaking), and ignored by CHAPMAN whenever she has asked it or its staff to comply with their agreement to offer reasonable accommodations, C.J. was forced to withdraw from CHAPMAN and has, due to its failure to accommodate her disabilities, decided not to return. C.J. brings this action because she would have completed her academic program at CHAPMAN, and obtained her degree, but for CHAPMAN'S failure to accommodate her disabilities.

**FIRST CAUSE OF ACTION**

**(Violation of Americans with Disability Act, Title III, 42 U.S.C. §12181, *et seq.*)**
**(Against CHAPMAN and DOES 1 through 25, inclusive)**

35. C.J. hereby reallages and incorporates by reference each and every allegation

9
JOHNSON V. CHAPMAN UNIVERSITY
COMPLAINT FOR DAMAGES

allegation set forth in paragraphs 1 through 34, inclusive, as though fully set forth herein.

36. CHAPMAN is subject to the Americans with Disability Act, Title III 42 U.S.C. 12181 *et seq.* (hereinafter the "ADA"). CHAPMAN is a place of higher learning, with open lecture halls. Despite its status as a for profit, private university, it must be accessible to all persons, including those with disabilities. The ADA applies to C.J. because she cannot access the mandated curriculum without the assistance of defined and specific accommodations. C.J. has defined disabilities within the meaning of the ADA. C.J is a person with both a physical and mental impairment that substantially limits one or more essential life activity. Without reasonable accommodations, C.J. could not perform the requirements of her college career as evidenced by repeated failure when the promised accommodation were withdrawn.

37. C.J. was able, and continues to be able, to effectively perform her obligations as a student as long as she was provided reasonable accommodations for her physical and mental disabilities.

38. From the Fall of 2015, and continuing through and including the 2018-2019 academic year, Defendants CHAPMAN and DOES 1 through 25, inclusive were aware of C.J.'s disabilities and her requests for accommodations. However, Defendants failed to provide the requested accommodations, in violation of the ADA, by, among other things:

    a. Failing to provide C.J. with priority registration so that she could enroll in classes during the times of day when she could optimally function physically and mentally;

    b. Failing to provide note takers in each of C.J.'s courses, to accommodate her memory and cognitive disabilities;

    c. Failing to offer a flexible excused absence policy in C.J.'s classes, given the fact that C.J. must often miss class for medical reasons; and

    d. Failing to provide C.J. with a testing environment with reduced distractions.

39. Furthermore, Defendants CHAPMAN and DOES 1 through 25, inclusive failed to engage in an interactive process to determine how to accommodate C.J.'s condition.

40. As a direct and proximate result of Defendants' blatant violations of the ADA, C.J. has suffered, and will continue to suffer, general and special damages, including but not

10
JOHNSON V. CHAPMAN UNIVERSITY
COMPLAINT FOR DAMAGES

limited to expenses related to treatment, financial loss, lost educational opportunities, standing in the community, emotional distress, physical manifestations of emotional distress, physical pain, embarrassment, disgrace, and humiliation, all in an amount to be proven at trial.

41. Furthermore, Defendants' actions were willful, fraudulent, malicious, and oppressive under California Civil Code Section 3294, thereby entitling C.J. to punitive damages in a sum appropriate to punish, make an example of Defendants and to deter Defendants and others from future similar conduct.

## SECOND CAUSE OF ACTION

**(Violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §701, *et seq.*)**
**(Against CHAPMAN and DOES 1 through 25, inclusive)**

42. C.J. hereby realleged and incorporates by this reference each and every allegation set forth in paragraphs 1 through 41 inclusive, as though fully set forth herein.

43. C.J. is informed, believes and thereon alleges that CHAPMAN is subject to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 701, *et seq.* (hereinafter "Section 504") because CHAPMAN receives federal financial assistance and are therefore subject to the provisions of 29 U.S.C. 794 which prohibits recipients of federal financial assistance from denying equal access to disabled students. By denying equal access to its educational services, and by subjecting C.J. to a hostile educational environment, CHAPMAN and DOES 1 through 25, inclusive have violated C.J.'s right under Section 504.

44. During C.J.'s time as a student at CHAPMAN, she had major physical and mental disabilities that limited one or more of her major life activities.

45. C.J. was able, and continues to be able, to effectively perform her duties as a student as long as she was provided with reasonable accommodations for her physical and mental disabilities.

46. From the Fall of 2015, and continuing through and including the 2018-2019 academic year, Defendants CHAPMAN, and DOES 1 through 25, inclusive, created a hostile learning environment as they were keenly aware of C.J.'s disabilities and her requests for

accommodations. However, Defendants failed to provide the requested accommodations, in violation of Section 504 by, among other things:

    a. Failing to provide C.J. with priority registration so that she could enroll in classes during the times of day when she could best function physically and mentally;

    b. Failing to provide note takers in each of C.J.'s courses, to accommodate her memory and cognitive disabilities;

    c. Failing to offer a flexible excused absence policy in C.J.'s classes; and

    d. Failing to provide C.J. with a testing environment with reduced distractions.

47. Furthermore, CHAPMAN, and DOES 1 through 25, inclusive failed to engage in an interactive process to determine how to continually and consistently accommodate C.J.'s well documented disabilities.

48. As a direct and proximate result of Defendants' violations of Section 504, C.J. has suffered, and will continue to suffer, general and special damages, including but not limited to expenses related to treatment, financial loss, lost educational opportunities, standing in the community, emotional distress, physical manifestations of emotional distress, physical pain, embarrassment, disgrace, and humiliation, all in an amount to be proven at trial.

49. Furthermore, Defendants' actions were willful, fraudulent, malicious, and oppressive under California Civil Code section 3294, thereby entitling C.J. to punitive damages in a sum appropriate to punish, make an example of Defendants and to deter Defendants and others from similar future conduct.

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT
**(Against All Defendants and DOES 1 through 25, inclusive)**

50. C.J. hereby reallages and incorporates herein by this reference each and every allegation set forth in paragraphs 1 through 49, inclusive, as though fully set forth herein.

51. Before the start of each and every semester when C.J. was enrolled at CHAPMAN, C.J. would request and CHAPMAN agreed to provide reasonable accommodations for her disabilities. CHAPMAN'S Office of Disability Services responded to C.J.'s request by

sending her an Accommodation Letter that detailed the accommodations that CHAPMAN would provide during the semester.

52. Each Accommodation Letter constitutes a written, binding contract in which CHAPMAN agrees to provide specific services to C.J. to accommodate her disabilities.

53. From the Fall of 2015, and continuing through and including the 2018-2019 academic year, CHAPMAN, CHAPMAN BOARD, STRUPPA, PRICE, MCALEXANDER and DOES 1 through 50, INCLUSIVE, have breached their obligations under the various Accommodation Letters by, among other things:

    a. Failing to provide C.J. with priority registration so that she could enroll in classes during the times of day when she could optimally function both physically and mentally;

    b. Failing to provide note takers in each of C.J.'s courses to accommodate her memory and cognitive disabilities;

    c. Failing to offer a flexible excused absence policy in C.J.'s classes to accommodate C.J.'s absences due to medical reasons; and

    d. Failing to provide C.J. with a testing environment with reduced distractions.

54. As a direct and proximate result of Defedants breach of contract, C.J. Has suffered and will continue to suffer general and special damages, including but not limited to expenses related to treatment, financial loss, lost educational opportunities, standing in the community, emotional distress, physical manifestations of emotional distress, physical pain, embarrassment, disgrace, and humiliation, all in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE

### (Against All Defendants and DOES 1 through 25, inclusive)

55. C.J. hereby realleged and incorporates herein by this reference each and every allegation set forth in paragraphs 1 through 54, inclusive, as though fully set forth herein,

56. Educational agencies such as CHAPMAN, as well as their governing boards and the employees of those agencies, have a duty to treat all students with dignity and respect,

regardless of a student's serious physical or mental disability. Further, educational agencies such as CHAPMAN, as well as their governing bodies and employees of those organizations, have a number of duties to protect and safeguard th students entrusted to them for educational purposes. CHAPMAN has publicly pledged to offer a diverse and inclusive community of students and staff so that students of all backgrounds and situations are in an environment that is safe and favorable to learning. As part of this duty not to discriminate against students with disabilities, CHAPMAN is obligated to provide reasonable accommodations to disabled students so that these students can function at the university in a manner similar to a non-disabled student, and enjoy the opportunities the university has to offer.

57. From the Fall of 2015, and continuing through and including the 2018-2019 academic year, CHAPMAN, CHAPMAN BOARD, STRUPPA, PRICE, MCALEXANDER and DOES 1 through 25, inclusive were aware of C.J.'s disabilities and her requests for accommodations. C.J. was completely forthcoming of her disabilities prior to enrolling at CHAPMAN. In fact, C.J. based her decision to attend CHAPMAN based on the promises CHAPMAN made to provide accommodations to C.J. so that she could function at CHAPMAN in a manner similar to a non-disabled student. However, when C.J. requested and followed up on the promised accommodations, Defendants breached their duty not to discriminate against C.J. by, among other things:

    a. Failing to provide C.J. with priority registration so that she could enroll in classes during the times of day when she could optimally function both physically and mentally;

    b. Failing to provide note takers in each of C.J.'s courses to accommodate her memory and cognitive disabilities;

    c. Failing to offer a flexible excused absence policy in C.J.s's classes to accommodate C.J.'s absences due to medical reasons; and

    d. Failing to provide C.J. with a testing environment with reduced distractions.

58. As a direct and proximate result of Defendants' breach of their duty, C.J. has suffered, and will continue to suffer, general and special damages, including but not limited

to expenses related to treatment, financial loss, lost educational opportunities, standing in the community, emotional distress, physical manifestations of emotional distress, physical pain, embarrassment, disgrace, and humiliation, all in an amount to be proven at trial.

59. Furthermore, Defendants knew C.J. was struggling, evidenced by her falling grades and multiple pleas for accommodations. By ignoring C.J.'s pleas, Defendants' actions were willful, fraudulent, malicious, and oppressive under California Civil Code Section 3294, thereby entitling C.J. to punitive damages in a sum appropriate to punish, make an example of Defendants and deter Defendants and others from similar future conduct.

## FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants and DOES 1 through 25, inclusive)

60. C.J. hereby realleges and incorporates herein by this reference each and every allegation set forth in paragraphs 1 through 59 inclusive, as though fully set forth herein. 70. Defendants CHAPMAN, CHAPMAN BOARD, STRUPPA, PRICE, MCALEXANDER, and DOES 1 through 25, inclusive, engaged in extreme and outrageous conduct by, among other things, failing to offer C.J. a flexible excused absence policy, failing to provide her with note takers and failure to provide her with a distraction free environment in which to take her exams, all of which was promised to C.J., the promise upon which she detrimentally relied on for enrollment to CHAPMAN. Defendants, despite being fully aware of C.J.'s needs and the severity of her struggles, intentionally ignored C.J.'s requests and caused C.J. to fail, which resulted in C.J.'s extreme emotional distress.

61. Defendants' conduct was intentional, and caused C.J. to suffer severe and lasting emotional distress that has changed C.J.'s life forever.

62. As a direct and proximate result of Defendants' conduct, C.J. has suffered, and will continue to suffer, general and special damages, including but not limited to expenses related to treatment, financial loss, lost educational opportunities, standing in the community, emotional distress, physical manifestations of emotional distress, physical pain, embarrassment, disgrace, and humiliation, all in an amount to be proven at trial.

15
JOHNSON V. CHAPMAN UNIVERSITY
COMPLAINT FOR DAMAGES

63. Furthermore, Defendants' actions were willful, fraudulent, malicious, and oppressive under California Civil Code Section 3294, thereby entitling C.J. to punitive damages in a sum appropriate to punish, make an example of Defendants and to deter Defendants and others form similar future conduct.

## SIXTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants and DOES 1 through 25, inclusive)

64. C.J. hereby realleges and incorporates herein by this reference each and every allegation set forth in paragraphs 1 through 63, inclusive, as though fully set forth and brought in this cause of action.

65. The conduct by Defendants CHAPMAN, CHAPMAN BOARD, STRUPPA, PRICE, MCALEXANDER, and DOES 1 through 50, INCLUSIVE, which included failing to provide C.J. with reasonable accommodations due to her disabilities, was extreme and outrageous, and was the result of negligence by these Defendants. Furthermore, Defendants setting a course of action into motion by allowing Student to remain ignored and unassisted despite her multiple requests and the promises included in her Accommodation Letter was negligent and in breach of their duty to protect C.J. and prevent her from the harm that resulted as a result of their negligence.

66. As a direct and proximate result of Defendants' conduct, C.J. has suffered, and will continue to suffer, general and special damages, including but not limited to expenses related to treatment, financial loss, lost educational opportunities, standing in the community, emotional distress, physical manifestations of emotional distress, physical pain, embarrassment, disgrace, and humiliation, all in an amount to be proven at trial.

67. Furthermore, Defendants' actions were willful, fraudulent, malicious, and oppressive under California Civil Code Section 3294, thereby entitling C.J. to punitive damages in a sum appropriate to punish, make an example of Defendants and to deter Defendants and others form similar future conduct.

## **PRAYER**

**WHEREFORE**, Plaintiff prays that Judgment be entered in her favor, and against Defendants, as follows:

**As to all causes of action:**

1. General Damages in an amount to be determined according to proof at trial;
2. Special Damages according to proof at trial;
3. Punitive Damages according to proof at trial;
4. Attorney fees that are allowed by law;
5. Prejudgment interest;
6. Any appropriate statutory damages;
7. For costs of sui incurred herein; and
8. For such other and further relief that the Court may deem just and proper.

Dated: 2/10/2020

LAW OFFICES OF ANDREA M. TYTELL

_____
ANDREA M. TYTELL
Attorney for Plaintiff